[Cite as *State v. Hudkins*, 2022-Ohio-249.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-07-066 |
| | : | O P I N I O N |
| - vs - | | 1/31/2022 |
| | : | |
| ELI P. HUDKINS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR36680

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Mark W. Raines, for appellant.

**HENDRICKSON, J.**

{¶1}    Appellant, Eli P. Hudkins, appeals from a decision of the Warren County Court of Common Pleas ordering him to be committed to Summit Behavioral Healthcare ("SBH") to undergo treatment to restore him to competency after concluding that an entire new restoration period commenced following the court's second finding of incompetency after a period of competency.[1]

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar for purposes of issuing this opinion.

{¶2}    On May 11, 2020, Hudkins was indicted on one count of menacing by stalking, a felony of the fourth degree, and one count of violating a protection order, a misdemeanor of the first degree.  Defense counsel filed a motion for a competency and sanity evaluation, asking the trial court to order an evaluation of Hudkins' current mental condition as well as his mental condition at the time the offenses were committed.  The trial court granted the motion and ordered an evaluation on July 16, 2020.

{¶3}    On July 30, 2020, following a hearing in which the trial court considered the report of Dr. Carla S. Dreyer, Psy.D., the trial court found Hudkins incompetent to stand trial.  The court determined that there was a substantial probability Hudkins could be made competent to stand trial within six months if provided with a course of treatment and it ordered Hudkins to engage in treatment to restore his competency at SBH.  Hudkins entered treatment at SBH on August 13, 2020.

{¶4}    On January 14, 2021, Dr. April G. Sutton, Psy.D., issued a report to the trial court following an evaluation of Hudkins.  Dr. Sutton's report opined that Hudkins' treatment had been successful and that Hudkins was competent to stand trial as he was capable of understanding the nature and objective of the proceedings against him and was capable of assisting in his own defense.  The trial court held a competency hearing on January 20, 2021, at which time the court found Hudkins competent to stand trial.  On that date, the court ordered Hudkins released from treatment at SBH and placed him on electronically monitored house arrest.  An entry journalizing the court's competency finding was filed on January 25, 2021.

{¶5}    Hudkins subsequently filed a waiver of his speedy trial rights and entered a plea of not guilty by reason of insanity.  A jury trial was set for July 12, 2021.  However, on June 21, 2021, defense counsel filed a renewed motion for a competency and sanity evaluation, requesting the court order an evaluation of Hudkins' current mental condition.

Within his motion, defense counsel noted that his "recent communication" with Hudkins caused him concern for Hudkins' competency as the communications were "similar to th[ose] prior to the initial Competency Evaluation." Defense counsel indicated he had contacted Dr. Dreyer for advice and she recommended a second competency evaluation be conducted to determine whether Hudkins had returned to a state of incompetency. On June 30, 2021, the trial court ordered the second competency evaluation.

{¶6} Dr. Dreyer conducted the second evaluation of Hudkins' competency on July 2, 2021. In a report dated July 6, 2021, Dr. Dreyer opined that Hudkins was incompetent as he was not capable of understanding the nature and objective of the proceedings against him or of assisting counsel in his defense due to psychiatric instability. Dr. Dreyer had concerns about Hudkins' ability to be restored to competency within the timeframe allowed under R.C. 2945.38. In her report, Dr. Dreyer stated that

> [d]ue to prior competency restoration efforts related to the offenses charged, it is not clear how much time is now allowed by law to restore the defendant to a competent state. If the defendant has at least six months available for restoration, it is my opinion that the defendant can be restored to a competent state within the time allowed by law, with a proper course of treatment. In this scenario, it is my opinion that the least restrictive setting for competency restoration is SBH. However, if the Court determines the defendant has less than the six months outlined in the statute available for restoration, it is my opinion that the defendant cannot be restored to a competent state within the time allowed by law, even with a proper course of treatment.

{¶7} Both the state and defense counsel filed memoranda with the trial court addressing the court's ability to order additional treatment to restore Hudkins to competency. Defense counsel maintained that R.C. 2945.38(C) limited the duration of treatment that the court could order to restore Hudkins to competency to a total of six months and that the time period for treatment did not begin anew merely because Hudkins had a regained competency for a period of time before once again becoming incompetent.

Relying on Hudkins prior commitment to SBH for treatment, defense counsel claimed R.C. 2945.38 only authorized the court to order treatment for the amount of time left under the original six months of treatment, which defense counsel noted was far less than six months given Hudkins' commitment at SBH from August 13, 2020 until January 20, 2021. The state, however, argued that the trial court had the ability to order a new period of restorative treatment for up to six months. Specifically, the state argued that "if there is an interim period in which the defendant is found competent, and the general course of the case was that [Hudkins] was competent, a second incompetent ruling would 'restart' the restoration period." Therefore, in the state's view, Hudkins' prior commitment at SBH for restorative treatment in no way limited the amount of time Hudkins could be treated following the court's second incompetency finding.

{¶8} A competency hearing was held by trial court on July 19, 2021, at which time the parties stipulated to the admissibility of Dr. Dreyer's July 6, 2021 report. The trial court found Hudkins incompetent to stand trial and ordered Hudkins to engage in treatment at SBH to restore his competency. In ordering Hudkins to return to SBH for treatment, the trial court specifically found that "upon the second finding of incompetency, where there had been a period of competency for [Hudkins], an entire new restoration period shall commence." An entry journalizing the court's competency finding was filed on July 19, 2021.

{¶9} Hudkins appealed from the trial court's July 19, 2021 entry finding him incompetent, setting forth the following as his sole assignment of error:

{¶10} THE TRIAL COURT ERRED IN ORDERING DEFENDANT TO BE COMMITTED TO UNDERGO AN ADDITIONAL SIX MONTHS OF COMPETENCY RESTORATION AS THOSE SIX MONTHS COMBINED WITH HIS PRIOR FIVE MONTHS WOULD TAKE HIM WELL BEYOND THE MAXIMUM COMMITMENT DURATION

ALLOWED BY STATUTE.

{¶11} Hudkins argues that because the most serious offense he was indicted for is a felony of the fourth degree, "a total of six months over the course of the case is the most [he] can be held in a behavioral health facility for the purpose of competency restoration." Relying on the language of R.C. 2945.38(C)(2), Hudkins contends that he could only be returned to treatment for "another 3 weeks and 4 days," that this amount of time was not sufficient to restore him to competency, and that pursuant to R.C. 2945.38(H), the trial court should have dismissed the indictment. The state maintains the trial court had the authority to "restart" the clock on restorative treatment after the second finding of incompetency. In support of its position, the state relies upon the Fifth Appellate District's decision *State v. Henderson*, 5th Dist. Fairfield No. 13-CA-61, 2014-Ohio-2991.

{¶12} We begin by examining the language of R.C. 2945.38, the statute that applies after the issue of a defendant's competency to stand trial has been raised and the court has conducted a competency hearing in accordance with R.C. 2945.37. R.C. 2945.38(B)(1)(a) provides that where a defendant is found incompetent to stand trial and "there is a substantial probability that the defendant will become competent to stand trial within one year if the defendant is provided with a course of treatment, the court shall order the defendant to undergo treatment."[2] However, pursuant to R.C. 2945.38(C),

> [n]o defendant shall be required to undergo treatment, including any continuing evaluation and treatment, under division (B)(1) of this section for longer than whichever of the following periods is applicable:
>
> (1) One year, if the most serious offense with which the defendant is charged is one of the following offenses:
>
> > (a) Aggravated murder, murder, or an offense of violence for which a sentence of death or life imprisonment may be

---

2. R.C. 2945.38 was amended by 2021 Am.Sub.S.B. No. 2, which became effective on August 3, 2021. The proceedings at issue in the present case are governed by the prior version of R.C. 2945.38.

imposed;

    (b) An offense of violence that is a felony of the first or second degree;

    (c) A conspiracy to commit, an attempt to commit, or complicity in the commission of an offense described in division (C)(1)(a) or (b) of this section if the conspiracy, attempt, or complicity is a felony of the first or second degree.

(2) Six months, if the most serious offense with which the defendant is charged is a felony other than a felony described in division (C)(1) of this section;

(3) Sixty days, if the most serious offense with which the defendant is charged is a misdemeanor of the first or second degree;

(4) Thirty days, if the most serious offense with which the defendant is charged is a misdemeanor of the third or fourth degree, a minor misdemeanor, or an unclassified misdemeanor.

As the most serious offense Hudkins faced was menacing by stalking, a felony of the fourth degree, Hudkins could only be required to undergo treatment for up to six months. See R.C. 2945.38(C)(2).

{¶13} When a defendant is ordered to undergo treatment, the person who supervises the treatment is ordered to file with the trial court a written report at certain intervals, including "whenever the person believes the defendant is capable of understanding the nature and objective of the proceedings against the defendant and assisting in the defendant's defense" and "[f]or a felony offense, fourteen days before expiration of the maximum time for treatment as specified in division (C) of the section and fourteen days before the expiration of the maximum time for continuing evaluation and treatment as specified in division (B)(1)(a) of this section." R.C. 2945.38(F)(1) and (2).

{¶14} With respect to the report that is filed,

[i]f, in the examiner's opinion, the defendant remains incapable of understanding the nature and objective of the proceedings

against the defendant and of assisting in the defendant's defense and there is a substantial probability that the defendant will become capable of understanding the nature and objective of the proceedings against the defendant and of assisting in the defendant's defense if the defendant is provided with a course of treatment, if in the examiner's opinion the defendant remains mentally ill or continues to have an intellectual disability, *and if the maximum time for treatment as specified in division (C) of this section has not expired*, the report also shall contain the examiner's recommendation as to the least restrictive placement or commitment alternative that is consistent with the defendant's treatment needs for restoration to competency and with the safety of the community.

(Emphasis added.)  R.C. 2945.38(G).

{¶15}  R.C. 2945.38(H) provides guidance on what a court should do if a defendant has been committed for restorative treatment and the court is subsequently advised by a treating physician or an examiner retained by the treating facility that there is not a substantial probability that the defendant will become competent or the expiration of the maximum time for treatment as specified in division (C) of the statute has expired.  Division (H) of the statute provides, in relevant part, as follows:

(4) If the court finds that the defendant is incompetent to stand trial, if the most serious offense with which the defendant is charged is a misdemeanor or a felony other than a felony listed in division (C)(1) of this section, and if the court finds that there is not a substantial probability that the defendant will become competent to stand trial even if the defendant is provided with a course of treatment, *or if the maximum time for treatment relative to that offense as specified in division (C) of this section has expired*, the court shall dismiss the indictment, information, or complaint against the defendant.

(Emphasis added.)  If the court orders a dismissal because the maximum time for treatment has expired, the dismissal "is not a bar to further prosecution based on the same conduct." R.C. 2945.38(H)(4).  The court must then discharge the defendant "unless the court or prosecutor files an affidavit in probate court for civil commitment pursuant to Chapter 5122. or 5123. of the Revised Code."  *Id.*

- 7 -

{¶16} The parties have asked this court to determine whether, as a matter of law, R.C. 2945.38 permits a trial court to order a defendant to undergo an additional period of treatment to restore the defendant to competency when the defendant has already undergone treatment and been restored to competency for a period of time before falling incompetent once again.

{¶17} The interpretation of a statute is a question of law that we review de novo. *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, ¶ 9. The court's main objective in applying a statute is to "determine and give effect to the legislative intent of the General Assembly as expressed in the language it enacted." *State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, ¶ 21. "If the language of the statute is plain and unambiguous and conveys a clear and definite meaning, then there is no need for this court to resort to the rules of statutory interpretation." *Id.*, citing *State v. Kreischer*, 109 Ohio St.3d 391, 2006-Ohio-2706, ¶ 12. "When there is no ambiguity on the face of the statute, it must simply be applied as written." *State v. Jeffries*, 160 Ohio St.3d 300, 2020-Ohio-1539, ¶ 15.

{¶18} Additionally, in examining a statute, a court must "read words in a statute in the context of the whole statute." *State v. Bryant*, 160 Ohio St.3d 113, 2020-Ohio-1041, ¶ 17, citing *State v. Williams*, 79 Ohio St.3d 459, 462 (1997). "Our role is to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative." *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, ¶ 14.

{¶19} We find no ambiguity in the language of R.C. 2945.38(C). The statute specifically provides that "[n]o defendant shall be required to undergo treatment, *including any continuing evaluation and treatment*, under division (B)(1) of the section for longer than * * * [s]ix months, if the most serious offense with which the defendant is charged is a felony

other than a felony described in division (C)(1) of this section." (Emphasis added.) R.C. 2945.38(C)(2). The language of R.C. 2945.38(C) clearly demonstrates the legislature contemplated "continuing evaluation and treatment" could occur after an initial incompetency finding and an order of treatment. The legislature repeatedly stressed, however, that the treatment could not extend beyond the "maximum time for treatment as specified in division (C)" of the statute. *See* R.C. 2945.38(G) and (H). If the maximum time for treatment to restore the defendant to competency was already expired, or if there was not a substantial probability that the defendant would become competent to stand trial within the time frame for treatment set forth in division (C) of the statute, the legislature indicated the indictment was to be dismissed and the defendant discharged, unless the court or prosecutor sought a civil commitment of the defendant under Chapter 5122 or 5123 of the Revised Code. R.C. 2945.38(H)(4).

{¶20} Nothing in the express language of R.C. 2945.38 indicates a legislative intent to "restart" the restorative-treatment clock if there is a time period wherein the defendant became competent before once again becoming incompetent. The state has not identified any provision in the statute for its argument that the clock restarts and that Hudkins was subject to a new six-month period of restorative treatment. Rather, the state relies solely on the Fifth District's decision in *State v. Henderson*, 2014-Ohio-2991.

{¶21} The circumstances in *Henderson* presented a "very unusual fact pattern" that involved competency determinations under one criminal case, reindictment of the same first-degree offenses of violence under a second case number, efforts to extend the trial court's jurisdiction under R.C. 2945.39, and unchallenged factual and legal findings made by the trial court regarding the effect that the dismissal of the first indictment and the reindictment had on the statutory time limitations and conditions precedent of R.C. 2945.38(C) and 2945.39(A)(2). *Henderson* at ¶ 18-19. In *Henderson*, the defendant was

charged in January 2011 with two counts of rape, first-degree felony offenses of violence. The defendant's competency was raised and, on April 29, 2011, following a hearing, the trial court found the defendant incompetent to stand trial and ordered him to undergo restorative treatment at a behavioral healthcare facility. *Id.* at ¶ 2. On February 8, 2012, the trial court held a subsequent hearing on competency. By entry filed February 11, 2012, the trial court found the defendant competent to stand trial. *Id.* at ¶ 3.

{¶22} Subsequently, on July 20, 2012 and September 10, 2012, competency hearings were again held. On September 25, 2012, by agreed entry, the defendant was again found to be incompetent to stand trial and the trial court ordered restorative treatment. *Id.* at ¶ 4.

{¶23} On November 30, 2012, the defendant was reindicted under a new case number on the same two rape counts. *Id.* at ¶ 5. The state dismissed the first indictment on December 18, 2012. *Id.* The defendant entered a plea of not guilty by reason of insanity on January 23, 2013. *Id.* The defendant subsequently filed a motion to dismiss on speedy trial grounds and a motion to dismiss for violating the one-year limitation for restoration to competency authorized by R.C. 2945.38(C). *Id.* at ¶ 6. On March 22, 2013, after the defendant filed his motions to dismiss, the state filed a motion with the trial court asking it to retain jurisdiction pursuant to R.C. 2945.39. *Id.* In an entry, the trial court determined the maximum period for restoration to competency had expired on January 12, 2013 and held a hearing to determine its continuing jurisdiction. *Id.* at ¶ 7-8. The court subsequently found it had continuing jurisdiction and committed the defendant to a behavioral healthcare facility for additional evaluation. *Id.* at ¶ 10. The court denied both of the defendant's motions to dismiss. *Id.* at ¶ 9.

{¶24} The defendant appealed, arguing the trial court erred in continuing jurisdiction under R.C. 2945.39(A)(2) as the statute was unconstitutional and violated his due process

rights, the statutory conditions precedent for continuing jurisdiction had not been met, and the court's decision was not supported by clear and convincing evidence. *Id.* at ¶ 17. The Fifth District ultimately found no merit to the defendant's arguments. In rejecting the defendant's claims, the court noted that "[t]here is no challenge to the trial court's conclusion that the dismissal of the first indictment and re-indictment did not affect the statutory time limitations and conditions precedent of R.C. 2945.38(C) and 2945.39(A)(2)." *Id.* at ¶ 18. The court noted that for 217 days, from February 21, 2012 in the first case, until September 24, 2012 in the second case, the defendant had been competent to stand trial and was not in treatment at a behavioral healthcare facility. *Id.* The Fifth District analyzed whether the "February 21, 2012 determination of competency turn[ed] off the one year time clock for 217 days." *Id.* at ¶ 19. The court answered that question in the affirmative, stating:

> The docket of the first indictment demonstrates that from February 21, 2012 to September 25, 2012, the general course of the case was that [the defendant] was competent, and numerous trial dates and suppression hearings were scheduled. Therefore, we conclude with the September 25, 2012 agreed entry finding [the defendant] incompetent to stand trial, *an entire new restoration period commenced and the deadline for final restoration or the invoking of the trial court's continuing jurisdiction was September 25, 2013.*

(Emphasis added). *Id.* at ¶ 20. The court then proceeded to find the statutory requirements for continuing jurisdiction under R.C. 2945.39(A)(2) were met and supported by clear and convincing evidence. *Id.* at ¶ 21-30.

{¶25} The circumstances presented in *Henderson* are significantly different than those presented in the present case. In *Henderson*, the defendant was charged with an offense of violence that was a felony of the first degree, which permitted the trial court to order the defendant to undergo treatment for one year. *See* R.C. 2945.38(C)(1)(b). After the defendant was found incompetent a second time and ordered to undergo restorative treatment, the state dismissed the original indictment and indicted the defendant on the

- 11 -

same charges under a new case number. Additionally, the defendant in *Henderson* was subject to continuing jurisdiction under R.C. 2945.39 after the expiration of the maximum time for treatment to restore the defendant to competency. In contrast, the most serious offense for which Hudkins was charged was a felony of the fourth degree. Pursuant to R.C. 2945.38(C)(2), Hudkins could only be ordered to undergo treatment for six months. Continuing jurisdiction under R.C. 2945.39 was not an option in Hudkins case, as that statute is applicable only when a defendant has been charged with an offense as described in division (C)(1) of R.C. 2945.38.[3] *See State v. Baird*, 8th Dist. Cuyahoga No. 108515, 2020-Ohio-2717, ¶ 10 (noting that a trial court could not make the findings required by R.C. 2945.39 to continue jurisdiction over an incompetent person where the defendant was charged with a fourth-degree felony since R.C. 2945.39 was inapplicable to the felony

---

3. R.C. 2945.39(A) specifically provides as follows:

> If a defendant who is charged with an offense described in division (C)(1) of section 2945.38 of the Revised Code is found incompetent to stand trial, after the expiration of the maximum time for treatment as specified in division (C) of that section or after the court finds that there is not a substantial probability that the defendant will become competent to stand trial even if the defendant is provided with a course of treatment, one of the following applies:

> (1) The court or the prosecutor may file an affidavit in probate court for civil commitment of the defendant in the manner provided in Chapter 5122. or 5123. of the Revised Code. If the court or prosecutor files an affidavit for civil commitment, the court may detain the defendant for ten days pending civil commitment. If the probate court commits the defendant subsequent to the court's or prosecutor's filing of an affidavit for civil commitment, the chief clinical officer of the entity, hospital, or facility, the managing officer of the institution, the director of the program, or the person to which the defendant is committed or admitted shall send to the prosecutor the notices described in divisions (H)(4)(a)(i) to (iii) of section 2945.38 of the Revised Code within the periods of time and under the circumstances specified in those divisions.

> (2) On the motion of the prosecutor or on its own motion, the court may retain jurisdiction over the defendant if, at a hearing, the court finds both of the following by clear and convincing evidence:

> (a) The defendant committed the offense with which the defendant is charged.

> (b) The defendant is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order.

charge at issue). The state did not seek to dismiss the charges against Hudkins and have him reindicted for menacing by stalking and violating a protection order. Here, unlike in *Henderson*, all of the trial court's incompetency findings and orders for Hudkins to undergo restorative treatments occurred under the same case number.

{¶26} Given the factual distinctions between the proceedings in *Henderson* and those in the case before us, we find the state's reliance on *Henderson* misplaced. Additionally, we are unpersuaded by the rationale expressed in *Henderson.* Although the Fifth District found that "an entire new restoration period commenced" following the trial court's second finding of incompetency after a period of competency, the Fifth District failed to identify the statutory authority for its holding.

{¶27} Accordingly, we find that the unambiguous language of R.C. 2945.38(C)(2) limits the maximum amount of time that a criminal defendant facing a felony offense other than that described in division (C)(1) of the statute can be ordered to undergo treatment to restore him to competency is a maximum of six months, and that a period of competency in between incompetency findings does not restart the treatment clock. As Hudkins had already undergone a period of restorative treatment from August 13, 2020 until January 20, 2021, there was less than a month of additional restorative treatment that the trial court could order before hitting the six-month maximum allowed by law. Dr. Dreyer's July 6, 2020 report, which was the only evidence offered at the July 19, 2021 competency hearing, indicated that Hudkins was incompetent and that there was not a substantial probability that Hudkins could be restored to competency with less than six months of treatment, even with a proper course of treatment. As such, the trial court should have dismissed the indictment and discharged Hudkins or, alternatively, filed an affidavit in probate court for civil commitment pursuant to R.C. Chapter 5122 or 5123. R.C. 2945.38(H)(4).

{¶28} We therefore sustain Hudkins sole assignment of error and reverse the

judgment of the trial court to the extent that the court found that a second finding of incompetency, after a period of competency, started an entirely new six-month restoration period for treatment under R.C. 2945.38(C)(2). The matter is remanded to the trial court with instructions to apply R.C. 2945.38(H)(4) by either dismissing the indictment and discharging Hudkins or, alternatively, seeking civil commitment of Hudkins in accordance with R.C. Chapter 5122 or 5123. In the event the trial court dismisses the indictment and discharges Hudkins, the dismissal in no way serves as a bar to further prosecution on the same conduct.

{¶29} Judgment reversed and the matter remanded for further proceedings.

PIPER, P.J., and S. POWELL, J., concur.